## SELLERS et al. v. AMERICAN INDUSTRIAL TRANSIT, INC.—242 S. W. (2d) 335.

Eastern Section.   May 30, 1951.

Petition for Certiorari denied by Supreme Court, August 31, 1951.

Erma Greenwood, of Knoxville, and Sam K. Carson, of Clinton, for plaintiff in error.

Thomas R. Chadwick, of Clinton, and W. P. O'Neil, of Knoxville, for defendants in error.

McAMIS, J.   This case is improperly styled, American Industrial Transit, Inc., having appealed in error from two separate judgments rendered against it in the Circuit Court of Anderson County in favor of Mrs. Nelle Sellers and Tyson Walker.   Both cases arose out of a collision between the Walker car, driven by Mrs. Sellers, and a passenger bus of the American Industrial Transit, Inc. Mrs. Sellers sued to recover for personal injuries.   Walker sued for damages to his car and for personal injuries. In the Sellers case the jury returned a verdict for $500. Walker recovered a verdict of $500 for personal injuries and $750 for property damage.

The assignments and supporting brief make no claim of error in the charge of the court or in the admission of evidence, the sole insistence being that the court erred in not directing verdicts for defendant because the operator

of the bus was guilty of no negligence and because Mrs. Sellers, the driver of the Walker car, was guilty of proximate contributory negligence in following the bus at a distance of 20 feet making it impossible for her to control the movements of the car and bring it to a stop when the driver of the bus was forced to stop as the result of other traffic coming to a halt in front of it.

The collision occurred in Oak Ridge, Tennessee, on June 16, 1948, at 8:00 o'clock in the morning as the plaintiffs were driving Miss Dardeen Taylor to the plant where she was employed.

Both vehicles were moving west at a speed of from 30 to 40 miles per hour as part of a heavy line of traffic. The Walker car was following the bus, operated by the witness Caldwell. Preceding Caldwell were two other busses of the defendant. The evidence is conflicting as to whether there were other vehicles between the Caldwell bus and the one immediately preceding it. There is substantial evidence supporting the contention of plaintiffs that there were no vehicles between these two busses. For clarity the three busses will be referred to as numbers 1, 2 and 3, the rear bus, the one with which the car collided, being bus Number 3.

Two passengers on bus Number 2 testified that there was a graveled area on the north side of the pavement for busses to pull off and stop in front of the Sportmen's Club but that bus Number 1 passed that point and came to a stop on the pavement about 75 feet west of the graveled area where a passenger alighted. According to their testimony the front bus made an abrupt stop and the second bus, on which they were riding, came to such a sudden stop that they were almost thrown out of their seat.

Plaintiffs and Miss Taylor, the other occupant, and William Vest, Jr., testified that no hand signal or warning

of any kind of an intention to stop was given by Caldwell, driver of bus Number 3. Vest was riding in another bus immediately following the Walker car. According to his "best recollection" the mechanical signal on the rear of the bus did not come on before the bus came to a sudden stop.

Other evidence for plaintiffs is to the effect that Mrs. Sellers was looking ahead and saw the bus stop but, although she immediately applied the brakes, she was unable to bring the car to a stop before it collided with the rear of the bus.

Caldwell testified that there were six vehicles ahead of him in the line of traffic including two other busses of the defendant, a Studebaker being between him and bus Number 2; that bus Number 1 stopped to let off a passenger, forcing bus Number 2 and the Studebaker also to a stop. He says he was driving 150 feet behind the Studebaker and "had plenty of chance to make a stop without jolting my passengers up, so I just came to a gradual stop . . .." He says that about the time the bus stopped he heard the car crash into the rear of the bus.

The testimony of Caldwell and others is that an application of the brakes is necessary to light up the stop signal on the rear of the bus. Caldwell testified that it was in working condition and there is other testimony that, after the accident, the signal came on when the brakes were applied.

██ ██ It is apparent that the evidence is in conflict on points material to a finding of negligence in the operation of the bus. Caldwell says the bus did not come to a sudden stop and that there was no need to bring it to a sudden stop because the vehicle immediately in front of him was 150 feet away. The proof for plaintiffs, on the contrary, is clearly sufficient to support a jury finding

that the bus did come to a sudden stop without warning. Considering the entire evidence in the light most favorable to the plaintiffs as we are required to do, we thus have a state of facts from which the jury could find that although Caldwell had 150 feet within which to stop the bus and was therefore not faced with an emergency, as defendant insists, he brought it to an abrupt stop knowing that he was being followed by other traffic.

Code Section 2682 provides that failure to give adequate and timely signals of an intention to slow down or stop, prima facie, constitutes reckless driving and that every driver who intends to stop shall first see that such movement can be made in safety and whenever the operation of any other vehicle may be affected shall give a signal plainly visible to the driver of such other vehicle of his intention to make such movement.

■ ■ We think it is clear that the jury could find from the evidence that there was no emergency excusing the non-compliance with the statute requiring a signal of an intention to stop as in Russell v. Furniture Renewal, Inc., 177 Tenn. 525, 151 S. W. (2d) 1066, 1068, strongly relied upon by defendant. We come then to the question: Was the negligence of the driver of the bus in bringing his bus to a sudden stop without giving the required signal the proximate cause of the collision or was it, as counsel for defendant earnestly and ably insist, proximately caused by the Walker car being operated too close behind the bus to enable the operator to adequately control it and bring it to a stop in time to avoid a collision under the ordinary exigencies of traffic prevailing at the time?

In support of its insistence that a verdict should have been directed on the undisputed evidence that Mrs. Sellers was driving 20 feet behind the bus defendant strongly

relies upon Russell v. Furniture Renewal, Inc., supra, and the general rule there stated that although ordinarily a signal warning vehicles in the rear is necessary when the front vehicle is stopped, there is a corresponding duty owing by the operator of the rear vehicle to have his vehicle under such control as to be able to stop in time to avoid striking the front vehicle if it comes to a sudden stop ''in case of an emergency or in obedience to traffic signals.'' The trial judge charged the jury substantially to this effect, leaving it to the jury to say whether there was an emergency stop and whether the driving of Mrs. Sellers conformed to the standard of ordinary care. The court charged specifically:

''No signal is required in case of an emergency if the time is too limited to give the required or adequate signals, provided the person otherwise required to give the signal did not create the emergency by some negligent act of his own.''

The latter portion of this charge was given to cover plaintiffs' insistence that the preceding busses of defendant created the emergency by suddenly stopping on the pavement, a question we find it unnecessary to consider.

We think the court correctly left to the jury questions of negligence, contributory negligence and proximate cause. These are all interwoven questions of fact. If the signal on the bus was on and the bus was gradually brought to a stop, clearly the driver of the bus would not be guilty of negligence and the driver of the Walker car could have stopped if she had the car under proper control. On the other hand, the driver of the car had a right to assume that, in the absence of an emergency or a stop made in obedience to law, the bus would not be brought to a sudden stop without warning. Whether the

car was being driven too close to the bus depended upon such variables as visibility, speed, the condition of the pavement and other prevailing conditions bearing on the question of ordinary and reasonable care. Generally, it is for the jury to say whether the rear vehicle was being operated too close behind the vehicle with which it collides. Woods v. Chinn, Mo. App., 224 S. W. (2d) 583; Skinner v. Pennsylvania Greyhound Lines, 7 Cir., 123 F. (2d) 497; Cram v. Eveloff, 8 Cir., 127 F. (2d) 486; Anderson v. Strack, 236 Iowa 1, 17 N. W. (2d) 719; Smith v. Carolina Coach Co., 214 N. C. 314, 199 S. E. 90; Nelson v. Brownfield, 21 Wash. (2d) 898, 153 P. (2d) 877; 61 C. J. S., Motor Vehicles, Sec. 527, page 536. Cf. Faulk v. McPherson, 27 Tenn. App. 506, 507, 182 S. W. (2d) 130.

In Russell v. Furniture Renewal, Inc., supra, the only errors assigned related to the charge of the court. The case had been submitted to the jury and the defendant, owner and operator of the front vehicle, came to the appellate courts with a verdict in its favor approved by the trial court. The question whether the case was properly submitted to the jury was not involved and was not considered in the opinion.

Finding no error, it results that the judgments must be affirmed. •

Hale and Howard, JJ., concur.