454

MRS. CHRISTINE EWING and ROBERT L. EWING,
Plaintiffs-in-Error, v. THOMAS W. BIRTHRIGHT,
Defendant-in-Error.—448 S.W.2d 71.

Middle Section.   August 29, 1969.

Certiorari Denied by Supreme Court December 1, 1969.

Hooker, Hooker & Wills, Nashville, for plaintiffs in error.

Howell & Fisher, Nashville, for defendant in error.

TODD, J. In these consolidated cases, the plaintiffs, Christine Ewing and Robert L. Ewing, have appealed in error from jury verdicts and judgments dismissing their

suits against defendant, Thomas W. Birthright, for personal injuries, medical expenses and property damages arising out of a motor vehicle collision.

Prior to the collision, defendant was driving his vehicle behind plaintiffs' vehicle, westbound, on Victory Memorial Bridge, at the western end of which there is an intersection with First Avenue. On signal from a police officer, plaintiffs' vehicle began a turn left (south) onto First Avenue when a third vehicle made an unexpected and unauthorized movement across the path of plaintiffs' vehicle, requiring plaintiffs' vehicle to be stopped suddenly. At the time of the stop, the right rear of plaintiffs' vehicle remained in the path of defendant's vehicle and was struck by defendant's vehicle, producing the damages sued for by plaintiffs.

The first assignment of error is as follows:

"The verdict of the jury is contrary to the weight and preponderance of the evidence."

■ This assignment cannot be considered in this Court. Leach v. Leach, 52 Tenn.App. 606, 376 S.W.2d 739 (1963) ; Howard v. Dewey Motor Co., 50 Tenn.App. 631, 363 S.W.2d 206 (1961) ; Bankhead v. Hall, 34 Tenn.App. 412, 238 S.W.2d 522 (1950).

The second and third assignments of error are:

"II. The Court erred in declining to charge Plaintiffs' Special Request No. 1, seasonably made, reading as follows:

'I further instruct you that there is imposed upon the operator of vehicles following other vehicles in a long slow-moving line of vehicles the duty to have his vehicle

under such control and at such distance from the car ahead of him that when a sudden stop is made in case of an emergency he can bring his vehicle to a standstill without striking the one immediately in front of him. Russell v. Furniture Renewal Co., 177 Tenn. 525, 151 S.W.2d 1066 (1941)' ''

"III. The Court erred in declining to charge Plaintiffs' Special Request No. 3, seasonably made, and reading as follows:

'I instruct you that no signal is required to be given by the driver of an automobile in case of an emergency if the time is too limited to give the required or adequate signal, provided the person otherwise required to give the signal did not create the emergency by some negligent act of his own. [This charge was expressly approved in Sellers v. American Industrial Transit, 35 Tenn.App. 46, 242 S.W.2d 335 (1951)].' ''

The record before this Court is not in proper condition for consideration of these two (II and III) assignments of error.

At the conclusion of the principal charge of the trial court is found only the following:

"Any thing else?

(Special Requests submitted)."

No other reference to special requests for instructions or their contents is found in the bill of exceptions.

In a large envelope which accompanied the Technical Record and Bill of Exceptions to this Court are found two depositions, a map marked "exhibit 1" without other authentication, and two papers marked "Plaintiffs'

Special Request No. 1'' and ''Plaintiffs' Special Request
No. 2.'' Each of the latter two papers bears the notation,
''July 3, 1968 Declined J. L. U.'', but no authentication
by the judge or clerk of the trial court. No paper is found
purporting to be ''Plaintiffs' Special Request No. 3,''
referred to in the third assignment of error.

There is little doubt that ''Plaintiffs' Special
Request No. 1'' is the same instrument referred to in
the second assignment of error. There is little doubt that
the notation ''July 3, 1968 Declined J. L. U.'' indicates
that the request was submitted and declined on July 3,
1968, which was the final date of trial of this cause. Said
''Plaintiffs' Special Request No. 1'' is not, however,
made a part of the transcript which has been certified to
this Court, hence technically and legally cannot be con-
sidered. Hayes v. Gill, 216 Tenn. 39, 390 S.W.2d 213
(1965), Gordons Transports, Inc. v. Bailey, 41 Tenn.App.
365, 294 S.W.2d 313 (1956), and authorities cited therein.

Nevertheless, for whatever comfort it may be to the
plaintiff, the second assignment of error has been infor-
mally considered. Even if the record were in proper
order, the assignment could not be sustained.

In Russell v. Furniture Renewal, Inc., cited supra,
there was, indeed, ''a long, slow-moving line of vehicles,''
composed of the plaintiff, Mrs. Russell, following the
Furniture truck which was following three other vehicles.
All five vehicles were stopped at a traffic light. When the
traffic light displayed green, all five vehicles moved for-
ward very slowly about three car lengths when the lead-
ing vehicle, a taxi, stopped requiring a stop by the four
other vehicles. All vehicles except the last stopped. The
last, operated by Mrs. Russell, collided with the rear of

the Furniture Renewal truck. Mrs. Russell sued the truck driver, Hagler, and his employer, but a jury dismissed her suit. In affirming the jury verdict, the Supreme Court said:

"(2, 3) We are further of the opinion that Hagler was not guilty of any negligence, while the plaintiff was guilty of contributory negligence in not having her automobile under control *under the circumstances of this case.*

"In 47 A.L.R., 703, the annotator said:

'The general rule is that, although ordinarily a signal warning vehicles in the rear is necessary when the vehicle in front is stopped, nevertheless there is imposed upon the operators of the rear vehicles the corresponding duty of having their vehicles under such control as to be able to stop in time to prevent running into the car ahead in case the latter vehicle comes to a sudden stop in case of an emergency or in obedience to traffic signals.'

"(4, 5) Many cases are cited in support of the text; also, in annotations in 24 A.L.R., 508, 62 A.L.R. 970, and 104 A.L.R., 485.

"Such a rule is practical, sensible, and necessary, for it is a well-known fact that *in a long, slow-moving line of vehicles the procession is likely to come to a sudden stop at any time;* and it is therefore the duty of an operator of an automobile to have his vehicle under such control and at such a distance from the car ahead of him *that when such sudden stop is made* he can bring his machine to a standstill without striking

the one immediately in front of him." 177 Tenn. pp. 531, 532, 151 S.W.2d 1066, 1068. (emphasis supplied)

In the foregoing, the Supreme Court announced a rule "under the circumstances of this case." The foregoing is not authority for unconditional liability of any motorist who collides with the vehicle ahead of him.

Under ordinary circumstances, it is generally true that in slow traffic a motorist should be able to stop to avoid collision with a car which has stopped ahead of him. This generalization is founded upon the reasonable logic that the following vehicle ought to be able to stop as quickly as the leading vehicle, and if not, should maintain such an interval as to compensate for the difference in stopping ability.

Such a generalization has exceptions. One exception would be where the leading vehicle did not stop by normal means, but stopped suddenly and unexpectedly by colliding with a vehicle or other obstruction. The following vehicle could hardly be expected to stop by application of brakes as quickly as the leading vehicle stopped by colliding with an obstruction.

The present case represents a possible exception to the general rule of *Russell*, supra. In this case, there was no "long, slow-moving line of vehicles" where the "procession is likely to come to a sudden stop at any time." There was only the plaintiff followed by defendant at an intersection. The plaintiff, on signal from an officer, started to turn left. A vehicle making such a movement on direction of an officer would not reasonably be expected to stop suddenly without notice. Furthermore, it is a mechanical, physical and mathematical fact, well-known to drivers of motor vehicles, that a vehicle turning out of

a lane or crossing a lane can stop and obstruct the lane much more suddenly than if it were moving straight forward in the lane.

In Sellers v. American Industrial Transit Inc., 35 Tenn. App. 46, 242 S.W.2d 335 (1951), both vehicles involved were moving at 30 to 40 miles per hour as part of a heavy line of traffic. The leading vehicle, a bus, stopped and was struck from the rear by a vehicle owned by one plaintiff and operated by another plaintiff. A jury awarded damages to the owner and driver of the following vehicle. This Court affirmed saying:

"In support of its insistence that a verdict should have been directed on the undisputed evidence that Mrs. Sellers was driving 20 feet behind the bus defendant strongly relies upon Russell v. Furniture Renewal, Inc., supra, and the *general rule* there stated that although ordinarily a signal warning vehicles in the rear is necessary when the front vehicle is stopped, there is a corresponding duty owing by the operator of the rear vehicle to have his vehicle under such control as to be able to stop in time to avoid striking the front vehicle if it comes to a sudden stop 'in case of an emergency or in obedience to traffic signals.' The trial judge charged the jury substantially to this effect, *leaving it to the jury to say* whether there was an emergency stop and *whether the driving of Mrs. Sellers conformed to the standard of ordinary care. * * *"* 35 Tenn.App. pp. 50, 51, 242 S.W.2d 335, 337. (emphasis supplied)

The exact words of the charge in Sellers are not quoted in the opinion, but *under its wording* the jury was left

free to say, "whether the driving of Mrs. Sellers conformed to the standard of ordinary care."

The requested charge in the present case did not "leave it to the jury to say," but rather instructed the jury in effect that defendant was negligent as a matter of law by failing to avoid the collision.

In Horn v. Commercial Carriers, Inc., 51 Tenn.App. 190, 365 S.W.2d 908 (1962), as in the present case, there was an unknown fugitive villain whose unlawful act caused the collision. The unknown motorist forced Fraker into the path of Horn who was unable to avoid collision with Fraker. The Commercial Carriers truck, which had been following Horn, struck Horn in the rear after Horn collided with Fraker. A jury verdict in favor of Horn and against Commercial Carriers was affirmed by this Court, which said:

"In oral argument, Counsel for Commercial and Mooneghan indicated that he was complaining of the following portion of the charge, to-wit:

'* * * The operator of an automobile in a line of traffic must have that vehicle under such control and such distance from the automobile ahead of him, that when a sudden stop is made, he can bring his vehicle to a standstill without striking the one immediately in front of him. * * *'

"It must be remembered that the foregoing portion of the charge complained of was taken out of context. However, a careful reading of the complete charge indicates to us that, over all, the charge thoroughly covered the issues." 51 Tenn.App., p. 202, 365 S.W.2d p. 914.

The unquoted portion of the charge was such as to satisfy this Court that the trial judge had "left to the jury" the question of whether the following driver "conformed to the standard of ordinary care."

The requested charge was properly declined because it was not applicable to the peculiar facts of the present case and because it stated a rule of law which would have erroneously led the jury to believe that defendant was unconditionally and conclusively negligent because he struck plaintiff from the rear. Furthermore, the general charge of the trial court was adequate instruction on this subject, witness the following excerpts from the charge:

"Tennessee Code Annotated, Section 59-824, reads as follows:

'Following too closely. (a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway.'

"Section 59-843 reads, in part, as follows:

'Signals for turns. Every driver who intends to start, stop or turn, or partly turn from a direct line, shall first see that such movement can be made in safety, and when the operation of any other vehicle may be affected by such movement, shall give a signal required in this section plainly visible to the driver of such other vehicle of his intention to make such movement.'

"It is the duty of all persons to obey all laws applicable to their behavior under the circumstances, and a failure to do so is negligence.

"It is the duty of all persons to exercise ordinary care for the safety of himself and others, and a failure to do so is negligence.

"In the exercise of ordinary care, everyone may presume that all others will obey the law, and act with reasonable prudence until something happens which should call attention to the fact that someone else is behaving or about to behave otherwise. That is, until it is apparent that such is not the case, ordinary care permits a person to act on the assumption that others will obey the law and act with reasonable caution and care.

"It is the duty of all persons to exercise and maintain that lookout or watchfulness which a reasonably prudent person would exercise and maintain under the same or similar circumstances; and to take and employ such precautions and/or measures to prevent injury as a reasonably prudent person would take or employ under the same or similar circumstances, and a failure to observe and perform these duties is negligence.

\* \* \* \* \* \*

"When faced with an unexpected and sudden emergency, not of his own or her own making, one is not required to act with the utmost of skill and prudence, but is only required to exercise reasonable care under the circumstances, and if the actions of one faced with such a sudden emergency, are those which might reasonably be expected of a reasonably prudent person under the same circumstances, he or she cannot be said to be negligent.

"Where a person is confronted by a sudden emergency not of his own making, not occasioned by his own

negligence, such a person is not chargeable with negligence if he acted according to his or her own best judgment, or because of want of time in which to form a judgment, omitted to act in a most judicious manner; but one may not excuse his or her lack of prudence by claiming an emergency if his or her own negligence brought about or contributed to bringing about the emergency.''

Whether for the technical reason of imperfect record, or upon its merits, the second assignment of error must be respectfully overruled.

As above indicated, the special request supporting the third assignment of error is totally absent from the record. The above-mentioned paper entitled ''Plaintiffs' Special Request No. 2'' has no relation to the subject matter of the assignment of error. Upon the authorities above cited, the third assignment of errors must be respectfully overruled.

Nevertheless, in consideration of the merits of this appeal, the substance of the third assignment of error has been considered. The trial judge charged the duty of a motorist to give timely signal of intention to stop, but, so far as the record shows, no instruction was given as to circumstances which would excuse the giving of such a signal, such as a sudden emergency. If such omission did occur, it was harmless for the reason that no issue was made at any time during the trial as to the giving of a stop signal. There is no evidence that a signal was not given. There was, therefore, no evidence upon which the jury might have found the plaintiff-husband guilty of any negligence in this regard. There was, in fact, no evidence of negligence on the part of either of the plaintiffs, hence

the verdicts in favor of the defendant must of necessity be founded upon a finding that defendant had not been shown to have been negligent, rather than upon any failure of plaintiff to give a signal.

It is always regrettable when the condition of a record does not permit full formal consideration of the matters urged by counsel in brief and argument. In this case, however, the merits of the appeal are such that no rights were lost and no injustice resulted.

The verdicts of the jury and judgments of the trial court are affirmed. The costs are taxed against the respective plaintiffs in each case.

Affirmed.

Shriver, P. J. (M.S.), and Puryear, J., concur.