FILED

**July 31, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**



ANGELA S. HOGAN,                )
                                )
    Plaintiff/Appellee,         )         Appeal No.
                                )         01-A-01-9801-CV-00023
v.                              )
                                )         Sumner Circuit
SONYA M. REESE,                 )         No.  15609-C
                                )
    Defendant/Appellant.        )
                                )

## COURT OF APPEALS OF TENNESSEE

## APPEAL FROM THE CIRCUIT COURT FOR SUMNER COUNTY

## AT GALLATIN, TENNESSEE

## THE HONORABLE THOMAS GOODALL, JUDGE

JOE D. HARSH
Harsh, Parks & Harsh
123 Public Square
Gallatin, Tennessee  37066
    ATTORNEY FOR PLAINTIFF/APPELLEE

R. KREIS WHITE
Adair, Schuerman & White
4701 Trousdale Drive, Suite 211
Nashville, Tennessee  37220
    ATTORNEY FOR DEFENDANT/APPELLANT

REVERSED AND REMANDED


WILLIAM B. CAIN, JUDGE
# OPINION

In this case defendant appeals a jury verdict for personal injuries resulting from an automobile accident in which the trial judge directed a verdict for the plaintiff on the issue of liability. This appeal takes issue with two aspects of the trial court's decision, to wit, damages and liability.

I.       With regard to liability:

Plaintiff alleges in her complaint that her automobile was struck from the rear by the automobile driven by defendant. She alleges specific acts of negligence including statutory violations and seeks recovery for pain and suffering together with loss of enjoyment of life.

In answer defendant admits certain acts of negligence including failure to keep a proper lookout ahead and failure to see that which was plain to be seen and take proper action with respect thereto.

Prior to trial the defendant was allowed to amend her answer to allege comparative fault.

On October 27, 1995 in the late afternoon plaintiff Angela S. Hogan was alone in her automobile driving from Gallatin toward Hendersonville on Highway 31A. Defendants Sonya M. Reese, accompanied by passenger Rocky Branham, was proceeding in the same direction on Highway 31A to the rear of Mrs. Hogan. As Mrs. Hogan approached a stop light she slowed or stopped her car and was struck from the rear by Mrs. Reese. Very little property damage occurred and Mrs. Hogan did not seek medical attention until two days following the accident.

Only three witnesses, plaintiff Angela S. Hogan, defendant Sonya M. Reese and passenger Rocky Branham, testified as to the facts of the accident. At the conclusion of all of the evidence the trial court could find no basis for comparative negligence and directed a verdict in favor of the plaintiff on the issue of liability, thus sending the case to the jury on damages only. The jury returned a verdict for the plaintiff as reflected by the final judgment as follows:

> After deliberation, the jury returned and reported to the Court that based on the proof submitted and by a preponderance of the evidence that the Plaintiff, ANGELA S. HOGAN, sustained total damages in the sum of SEVENTEEN THOUSAND SEVEN HUNDRED FIFTY ($17,750.00) DOLLARS, as a result of the October 27, 1995 accident. Said total damages were composed of economic damages in the amount of $4,395.16 and non-economic damages of $13,354.84. Each juror did, upon being polled by the Judge, acknowledge and confirm the verdict as reported by foreperson Jerry Anderton, was in fact the verdict agreed upon by each individual juror, and the jury as a whole.
>
> Therefore, based on the verdict rendered and the findings made by the jury, it is therefore ORDERED, ADJUDGED AND DECREED
>
> 1. Plaintiff, ANGELA S. HOGAN, have and recover from the Defendant, SONYA M. REESE, the sum of SEVENTEEN THOUSAND SEVEN HUNDRED FIFTY ($17,750.00) DOLLARS.

Defendant filed a timely motion for a new trial complaining of the directed verdict on liability, the applicability of the statutory presumptions of T.C.A. § 24-5-113(a)(3) and the alleged erroneous instruction by the court with respect to medical expense presumptions.

This motion was overruled and defendant appealed.

Appellant states three issues on appeal to-wit:

> 1. Did the circuit court err in directing verdict in favor of the plaintiff as to liability?
> 2. Did the circuit court err by permitting introduction of medical expenses other than the charges of chiropractor Ettlinger with a presumption of both reasonableness and necessity?
> 3. Was the circuit court's instruction related to a

medical expense presumption (TPI Civil 14.12) erroneous?

The action of the trial court in directing a verdict in favor of the plaintiff as to liability presents a difficult issue on appeal under the necessary, comparative fault analysis mandated by *McIntyre v. Ballentine*, 833 S.W.2d 52 (Tenn. 1992) and its progeny.

While *Eaton v. McLain*, 891 S.W.2d 587 (Tenn. 1994) was actually decided on the "duty" issue, the discussion therein of the *McIntyre* effect where the negligence of both plaintiff and defendant is alleged provides a good starting point.

Said the court:

[4] The recitation of these standards of review does not, however, provide a satisfactory answer to the issue before us because *McIntyre* has radically changed the question to be asked by the trial court on a motion for directed verdict/JNOV which alleges negligence on the part of the plaintiff. The question now is *not* whether the plaintiff was guilty of *any* negligence that proximately caused the resulting injuries. Instead, the question is: assuming that both plaintiff and defendant have been found guilty of negligent conduct that proximately caused the injuries, was the *fault attributable to plaintiff equal to or greater than the fault attributable to the defendant.*

The trial court's determination as to whether reasonable minds could differ on this new question is made more difficult by the fact that it has not been provided with any guidance as to how to apportion *fault*. The formulation of workable, meaningful standards to guide trial courts in this area is no simple matter; this is evidenced by the marked divergence of opinion of courts and commentators on whether fault should be apportioned according to the nature of the parties' conduct, the closeness of the causal relationship between the conduct and the injuries, or combination of the two. Some commentators have taken an extreme position on this issue, arguing that no rational or objective basis for the apportionment of fault exists.

We are unpersuaded by the contention that there is no meaningful way to provide guidance to trial courts and juries in apportioning fault, or by the alternative contention that it

is unwise to provide any such guidance.  While we agree that it is impossible to formulate an exhaustive set of guidelines for apportioning fault that will adequately cover the manifold circumstances in which negligence actions may arise, we nevertheless believe that trial courts and juries must have some guidance, however imprecise and imperfect, in discharging their respective duties in apportioning fault.

*Eaton v. McLain*, 891 S.W.2d 587, 590-91 (Tenn. 1994).  Footnotes omitted.

This question addressed in *Eaton* involved the determination of the *McIntyre* "fifty percent rule" in passing on a motion for a directed verdict made by the defendant.  If, <u>as a matter of law</u>, the trial court or the appellate court may determine in a given case that the percentage of fault of the plaintiff is at least 50% of the total fault, then a directed verdict for the defendant is mandated.

This issue was addressed by the Eastern Section of the Court of Appeals in the recent case of *LaRue v. 1817 Lake Incorporated*, 966 S.W.2d 423 (Tenn. Ct. App. 1997) Perm. App. denied (Apr. 13, 1998) wherein the trial court had directed a verdict in favor of "dram shop" defendants and then addressed the "fifty percent rule" as to the plaintiff passenger and defendant driver.  The trial court held that under the proof the passenger LaRue was at least 50% at fault and thereupon directed a verdict in favor of the defendant driver.  The Court of Appeals reversed, holding:

> As in *Silcox,* there is ample evidence here suggesting that LaRue's decision to get on the motorcycle was ill-advised and negligent. However, viewing all of the evidence in a light most favorable to plaintiffs, as we are required to do, we cannot say that reasonable minds could reach only the conclusion that LaRue was equally or more at fault than Brewer.  We agree that the conclusion reached by the trial court that LaRue's fault was equal to or greater than Brewer's is a reasonable conclusion.  We cannot say, however, that there is not another conclusion that could be reached by reasonable minds.
>
> Brewer was the operator of the motorcycle and admittedly was traveling too fast at the time the accident occurred. It is not unreasonable to conclude that the accident was caused by excessive speed rather than or in addition to Brewers state of intoxication.  Brewer's blood alcohol content was roughly twice that of LaRue's.  In the final

analysis, as the *Silcox* court noted, comparative fault is a question of fact within the jury's province, which should not lightly be invaded by the trial court. We do not mean to imply in any fashion that the trial court's action gave light consideration to the evidence or any other facet of the case. We are of the opinion that, under all the circumstances of this case, the question of the degree of fault between LaRue and Brewer should have been submitted to the jury.

*LaRue v. 1817 Lake Incorporated*, 966 S.W.2d at 427.

In the case at bar the situation is reversed; here the trial court has directed a verdict for <u>the plaintiff</u> rather than for the defendant. Under a comparative fault analysis this means that the trial judge has determined <u>as a matter of law</u> that the defendant is 100% at fault and plaintiff is zero percent at fault. Thus the controlling question for our determination is whether or not, accepting the evidence in the light most favorable to the non-movant defendant, there is material evidence from which a trier of fact could find <u>any</u> percentage of fault attributable to the plaintiff. If so, the comparison becomes a question of fact for the jury and not a question of law for the court.

As in *LaRue* there is ample and indeed overwhelming evidence of the fault of the defendant Reese. A verdict for the plaintiff, however, cannot be directed so as to cast 100% of the fault upon the defendant if reasonable minds can differ as to whether or not the plaintiff was in any way at fault. At trial the defendant Reese testified:

A.    I was in traffic and I was going towards Hendersonville from Gallatin. The light had changed. I was going down and I saw this other car slowing down. Ms. Hogan slammed on her brakes. I tried to stop but I didn't. I barely hit her and the car behind me did have to take the shoulder of the road from hitting me.

Rocky Branham, the passenger in the Reese car, testified:

Q.    Tell these folks what happened.
A.    Sonya was going down the road. Ms. Hogan over here put on her brakes and we bumped into her.
                        . . .
Q.    Do you remember seeing Sonya's car (sic) anytime

prior to right before you ran into it?

A. All the time.

Q. Do you remember what any of the other cars looked like around the scene or the accident scene?

A. I looked at the cars if that's what you're asking.

Q. I'm asking do you remember what any of them looked like at the scene of the accident?

A. Yes, sir.

Q. Aside from Ms. Hogan's car and the car that you were driving, do you remember any of the other vehicles or anything?

A. No, sir.

Q. And did you say the light turn red?

A. It turned red after she stopped.

Q. The light turned red after she stopped?

A. She stopped and then the light turned.

Q. You're saying Ms. Hogan stopped first and then the light turned red?

A. Yes, sir, as far as I can remember.

Q. Do you think you could be wrong on that?

A. I believe that's correct.

Q. You believe or are you absolutely sure?

A. No, I'm not absolutely sure.

. . .

Q. Well, if you're not absolutely certain, how would you know?

A. There were no cars in front of Ms. Hogan stopped.

Q. There were no cars in front of her?

A. No, sir.

Q. Were there other cars stopped in front of the light, or do you know?

A. No, sir. I couldn't be certain. I can't remember it's been so long ago.

In her discovery deposition testimony Ms. Hogan testified that she had stopped about fifty feet behind the car in front of her.

In analyzing a similar situation under pre-McIntyre law Judge McAims for the Court of Appeals observed:

[1,2] It is apparent that the evidence is in conflict on points material to a finding of negligence in the operation of the bus. Caldwell says the bus did not come to a sudden stop and that there was no need to bring it to a sudden stop because the vehicle immediately in front of him was 150 feet away. The proof for plaintiffs, on the contrary, is clearly sufficient to support a jury finding that the bus did come to

a sudden stop without warning. Considering the entire evidence in the light most favorable to the plaintiffs as we are required to do, we thus have a state of facts from which the jury could find that although Caldwell had 150 feet within which to stop the bus and was therefore not faced with an emergency, as defendant insists, he brought it to an abrupt stop knowing that he was being followed by other traffic.

*Sellers, et al. v. American Industrial Transit, Inc.,* 35 Tenn. App. 46, 49-50, 242 S.W.2d 335, 336 (1951).

In *Sellers* as in *Anderson v. Carter*, 22 Tenn. App. 118, S.W.2d 892 (1937) reasonable minds could differ as to whether or not plaintiff was guilty of some degree of proximate negligence. If such precluded a directed verdict pre-McIntyre it is today sufficient to force a comparison which is always a question of fact and not a question of law.

"Although circumstances could arise under which a directed verdict would be appropriate in a comparative negligence case, they are rare." 57B *Am.Jur. 2d Negligence* § 1282 (1989).

As has been said by this court:

In a jury case, the issues of negligence and proximate cause are generally for the jury. Such issues may be pre-emped by the Trial Judge only where the evidence and reasonable inferences therefrom are so free of conflict that all reasonable minds would agree with the decision of the trial judge. *Williams v. Brown*, Tenn. 1993, 860 S.W.2d 854, 857.

*Husted v. Echols*, 919 S.W.2d 43, 45 (Tenn. Ct. App. 1995). *See also Prince v. St. Thomas Hospital*, 945 S.W.2d 731, 735 (Tenn. App. 1996).

Considering the evidence in this case in the light most favorable to the defendant there is sufficient evidence for reasonable minds to find some percentage of fault attributable to the plaintiff. Thus, a directed verdict for the plaintiff assessing 100% fault to the defendant as a matter of law is error and must be reversed.

II.     With regard to Damages:

Appellant next contends that T.C.A. § 24-5-113(a) is not applicable in this case so as to provide prima facie evidence of the necessity and reasonableness of certain medical expenses offered in evidence by plaintiff. Appellant's complaint alleges in pertinent part:

> (c) Necessary and reasonable medical expenses; copies of which are attached hereto, per T.C.A. Section 24-5-113:
>
> | | | |
> |---|---|---|
> | Sumner Regional Medical Center -------- | $ 990.00 | |
> | Suburban Rehabilitation ------------------- | | 1,207.00 |
> | Sumner Radiology ------------------------- | 177.00 | |
> | Big B Drugs -------------------------------- | 53.16 | |
> | Dr. Kenneth Case ------------------------- | 35.00 | |
> | | $ 2,462.16 | |
>
> Additionally, Plaintiff has incurred $1,683.00 for treatment from Dr. Frank C. Etlinger;
>
> (d) Pain and discomfort to her neck, back, and spine area; and
>
> (e) All other injuries and damages allowed by law.

Relative to the allegations of medical expenses, defendant answers:

> 7. Defendants deny that T.C.A. § 24-5-113(a)(3) applies or that T.C.A. § 24-5-113(b)(1) affords any presumption of the necessity of the medical care. Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 7 and therefore demands strict proof.

Plaintiff filed a pre-trial motion in limine asserting in part:

> Plaintiff would show that there is a rebuttable presumption that all the medi[c]al bills incurred on her behalf are both reasonable and necessary pursuant to T.C.A. § 24-5-113(B)(1) and (2) and is therefore entitled to said rebuttable presumption.
>
> An itemization of medical expenses incurred as of the date of filing is contained in Plaintiff's Complaint. Furthermore, on October 11, 1996, Plaintiff served upon counsel for Defendant, her answers to Interrogatories to which in relevant part giving a full and complete itemization via copies of all medical bills and expenses incurred by Plaintiff as a result of the collision which is the subject of this cause.
>
> To date, Defendant has not served upon the Plaintiff any specific itemization of any bills produced in Plaintiff's Interrogatories to which Defendant believes not to be reasonable and necessary.

In the alternative, Plaintiff would show that she is entitled to prima facie presumption provided in T.C.A. § 24-5-113(a)(1).

Defendant thereupon filed a pre-trial motion in limine asserting:

3.   Under <u>Porter v. Green</u>, 745 S.W.2d 874 (Tenn. App. 1987), the defendants seek a ruling <u>in limine</u> precluding any reference to causation of the plaintiff's injuries absent competent medical proof within a reasonable degree of medical certainty.

4.   The defendants, through counsel, moves the Court for an Order striking or excluding any presumption of the reasonableness or necessity of the plaintiff's medical expenses absent competent proof of the necessity of such care.   In

support thereof, the defendant calls the Court's attention to the unequivocal language of TCA 24-5-113(a)(3), the statute that gives rise to a presumption related to medical expenses in certain (and here, inapplicable) situations:

> 24-5-113.   Medical, hospital or doctor bills - Prima facie evidence of necessity and reasonableness.
>
> (a)(1)   Proof in any civil action that medical, hospital or doctor bills were paid or incurred because of any illness, disease, or injury may be itemized in the complaint or civil warrant with a copy of bills paid or incurred attached as an exhibit to the complaint or civil warrant. The bills itemized and attached as an exhibit shall be prima facie evidence that the bills so paid or incurred were necessary and reasonable.
> . . .
> (3) The prima facie presumption shall apply to the medical, hospital and doctor bills itemized with copies of bills attached to the complaint or civil warrant; provided, that the total amount of such bills does not exceed the sum of two thousand five hundred dollars ($2,500).

In this case, the plaintiff seeks to circumvent the plain meaning and pervert the purpose of the cited statute by incurring bills in excess of the $2,500.00 cap and trying to "hand-pick" bills in order to gain an improper presumptive advantage where none is due.

-10-

At common law reasonableness and necessity of medical expenses allegedly caused by the defendant are elements constituting a part of the burden of proof resting upon the plaintiff. *See 22 Am.Jur.2d "Damages"*, § 197 (1988). To relieve this burden on small claims, the legislature by chapter 734 of the Public Acts of 1978 created a prima facie presumption of necessity and reasonableness under certain conditions.

This act of the General Assembly is presently codified as T.C.A. § 24-5-113(a)(1)(2)and (3). The next change in the present codification as to the 1978 act was chapter 481 of the Public Acts of 1981 raising the original $500 maximum amount to the present maximum amount of $2,500. This portion of the act, thus amended, provides as follows:

> 24-5-113. Medical, hospital or doctor bills -- prima facie evidence of necessity and reasonableness. -- (a)(1) Proof in any civil action that medical, hospital or doctor bills were paid or incurred because of any illness, disease, or injury may be itemized in the complaint or civil warrant with a copy of bills paid or incurred attached as an exhibit to the complaint or civil warrant. the bills itemized and attached as an exhibit shall be prima facie evidence that the bills so paid or incurred were necessary and reasonable.
> (2) This section shall apply only in personal injury actions brought in any court by injured parties against the persons responsible for causing such injuries.
> (3) This prima facie presumption shall apply to the medical, hospital and doctor bills itemized with copies of bills attached to the complaint or civil warrant; provided, that the total amount of such bills does not exceed the sum of two thousand five hundred dollars ($2,500).

In order to qualify medical expenses under this statute it is necessary that such expenses be itemized and copies of bills therefor which have been paid or incurred be attached as an exhibit to the complaint. Such procedure was not followed in the case at bar.

By chapter 235 of the Public Acts of 1989 the General Assembly added an additional procedure by which a plaintiff may establish a rebuttable presumption that medical, hospital and doctor bills are reasonable. This 1989 act

is now codified as T.C.A. 24-5-113(b)(1) and (2).

This codification of the Act of 1989 is not limited as to the amount of such medical bills but provides only a rebuttable presumption that such medical bills are reasonable and does not address at all the question of whether or not such medical bills were "necessary".

The codified 1989 act reads as follows:

> (b)(1)  In addition to the procedure described in subsection (a), in any civil action for personal injury brought by an injured party against the person or persons alleged to be responsible for causing the injury, if an itemization of or copies of the medical, hospital or doctor bills which were paid or incurred because of such personal injury are served upon the other parties at least ninety (90) days prior to the date set for trial, there shall be a rebuttable presumption that such medical, hospital or doctor bills are reasonable.
>
> (2)  Any party desiring to offer evidence at trial to rebut the presumption shall serve upon the other parties, at least forty-five (45) days prior to the date set for trial, a statement of that party's intention to rebut the presumption.  Such statement shall specify which bill or bills the party believes to be unreasonable.  [Acts 1978, ch. 734, § 1; T.C.A., § 24-517; Acts 1981, ch. 481, § 1; 1989, ch. 235, § 1.]

In the case at bar plaintiff attached medical, hospital and doctor bills in response to request for production of documents in a manner sufficient to invoke the rebuttable presumption that such medical, hospital and doctor bills are reasonable.

"The fact a given amount is proven as undisputed medical expenses does not prove those expenses were necessary." *Karas v. Thorne*, 531 S.W.2d 315, 317 (Tenn. App. 1975).

In the present case the court charged the jury as to medical expenses:

> The next element of damages that Ms. Hogan may recover is for reasonable and necessary expenses for medical care, services, supplies actually given in the treatment of a party as shown by the evidence.  Now, in this case some medical bills have been introduced in evidence, and because

these bills do not exceed a certain sum established by the law, you may presume these expenses were reasonable and necessary.

As the proof in the case did not establish prima facie evidence of necessity and reasonableness under T.C.A. 24-5-113(a)(1)(2) and (3) because of the failure of the plaintiff to comply with the requirements of T.C.A. 24-5-113(a)(1) no evidence of necessity and reasonableness appears in the record.

Conceding that the response to production of document requests complies with T.C.A. 24-5-113(b)(1) and (2) a rebuttable presumption of reasonableness under T.C.A. 24-5-113(b)(1) is established but no prima facie evidence of necessity exists.

The charge of the court to the jury that " . . . you may presume these expenses were reasonable and necessary," is not supported by evidence.

No reason is apparent as to why the General Assembly chose to limit ch. 235 of the Acts of 1989 to "reasonableness" and not to expand it to include "necessity" but the statute is not ambiguous and must be held to mean what it says.

The judgment of the trial court is reversed and the cause is remanded for a new trial on all issues.

Costs of this cause are assessed against the appellee.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE


_____
WILLIAM C. KOCH, JR., JUDGE